# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| VIVIAN JOHNSON | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | No. 3:16-cv-136 |
|  | ) |  |
| SGL CARBON, LLC | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

## ORDER

**THIS MATTER** is before the Court upon Defendant's Motion to Dismiss for Failure to State a Claim (Doc. No. 6), Defendant's Brief in Support (Doc. No. 7), Plaintiff's Memorandum in Opposition (Doc. No. 8), and Defendant's Reply (Doc. No. 12). Defendant requests that this case be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Motion is **DENIED IN PART** and **GRANTED IN PART**. Plaintiff has also filed a Motion to Amend/Correct (Doc. No. 10), along with a Proposed Amended Complaint (Doc. No. 10-1). Plaintiff's Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff Vivian Johnson is a female, African-American resident of Mecklenburg County, North Carolina and Defendant is a Nevada limited liability corporation with an office in Charlotte, North Carolina. (Doc. No. 1-1 at ¶¶ 1-2). Defendant employed Plaintiff from July 23, 2012, through December 19, 2014. (*Id.* at ¶ 3).

Defendant hired Plaintiff as a Client Support Specialist on July 23, 2012. (Doc. No. 1-1 at ¶ 8). Plaintiff was the only female on the Infrastructure Team ("IT") and one of two African-

American employees in the Charlotte office of seven employees. (*Id.* at ¶ 10). Plaintiff reported to Marshall Munyak, a Caucasian male. (*Id.* at ¶ 8-10). As of June 2014, Plaintiff had not received any disciplinary warnings or coaching regarding her work performance or conduct, and Plaintiff's most recent job performance evaluation rated her performance as "Excellent." (*Id.* at ¶ 11).

However, Plaintiff alleges that Mr. Munyak treated her differently than her male, Caucasian coworkers by excluding her from job-specific meetings, conferences, conference calls, job-critical training, and office outings from the beginning of her employment. (*Id.* at ¶ 12). Further, Mr. Munyak assigned all extraneous administrative and clerical responsibilities to Plaintiff, although they were not included in her job description. (*Id.* at ¶ 14). Plaintiff also did not receive the same equipment as the other male members of the IT team, such as a Blackberry, laptop, desktop, and dual monitors. (*Id.* at ¶ 15). Plaintiff continued to be excluded from activities attended by the rest of the male members of Defendant's IT team from March through July 2014. (*Id.* at ¶ 16-18).

Plaintiff experienced additional difficulties working with her coworker Marcus Owens, who also reported to Mr. Munyak. (*Id.* at ¶ 19). For example, Mr. Owens was not disciplined for refusing to include Plaintiff in specific training for office systems. (*Id.*) Further, Mr. Owens would not answer Plaintiff's questions although he would immediately assist male team members. (*Id.* at ¶ 20). Mr. Owens also repeatedly asked Plaintiff, "Do you really know what you're doing?" in front of her male coworkers. (*Id.*) On June 18, 2014, Mr. Owens yelled at Plaintiff, "Y'all are lazy" while Plaintiff was the only person in the room, a remark that Plaintiff understood to mean that African-Americans are lazy. (*Id.* at ¶ 21).

On numerous occasions when Plaintiff complained about Mr. Owens's behavior, Mr. Munyak allegedly would tell Plaintiff she was "dropping a dead raccoon at his feet." (*Id.* at ¶ 22). On June 19, 2014, Mr. Munyak told Plaintiff she was being "too emotional." (*Id.* at ¶ 23). Plaintiff also endured cursing and foul language from both her coworkers and Mr. Munyak. (*Id.* at ¶ 24). Plaintiff complained to Human Resources about Mr. Owens's behavior and Mr. Munyak's failure to respond, but upon Plaintiff's information and belief, no investigation was conducted and no corrective action was taken. (*Id.* at ¶ 25).

Plaintiff took medical leave on August 7, 2014, and returned to work on or about September 22, 2014. (*Id.* at ¶ 26). After Plaintiff returned, Mr. Munyak changed her IT responsibilities and removed her access to certain accounts. (*Id.*) Over the next few months, Mr. Munyak cancelled three meetings to discuss Plaintiff's promotion and continued to take away her work responsibilities. (*Id.* at ¶ 27-28). Further, Plaintiff was told that Mr. Munyak planned to "get rid of" her because she was causing him problems. (*Id.* at ¶ 27).

On December 15, 2014, Plaintiff returned to the office after working through the weekend preparing invoices for which Mr. Owens refused to provide critical information. (*Id.* at ¶ 29). Plaintiff complained to Mr. Munyak about Mr. Owens' behavior, and Mr. Munyak made excuses. (*Id.*) Plaintiff then informed Mr. Munyak she was leaving early for the day and Mr. Munyak became agitated, following Plaintiff to the elevator and verbally harassing her. (*Id.*) Later that day, Plaintiff received a phone call from Human Resources informing her that she was being terminated for leaving work without permission and for using inappropriate language. (*Id.* at ¶ 30).

Plaintiff filed her charges of race and sex discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on January 16, 2015, pursuant to 42 U.S.C.

§ 2000e-5(b) and (e). (Exhibit A, Doc. No. 1-1). In response, the EEOC issued a Notice of Right to Sue on November 19, 2015. (Exhibit B, Doc. No. 1-1). Plaintiff then brought this action on February 11, 2016, asserting claims against Defendant SGL Carbon, LLC for violating Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.[1] (Doc. No. 1-1).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992), *cert. denied*, 510 U.S. 828 (1993). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2).

In order to survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the Plaintiff. *Priority Auto Grp., Inc. v. Ford Motor Credit Co.*, 757 F.3d 137, 139 (4th Cir. 2014).

---

[1] Plaintiff initially alleged an additional claim of intentional, or in the alternative, negligent infliction of emotional distress (Doc. No. 1-1 at ¶¶ 54-58), but later filed a Motion to Amend/Correct her Complaint. (Doc. No. 10). Plaintiff's Proposed Amended Complaint does not include claims for intentional or negligent infliction of emotional distress. Thus, this Order does not address Defendant's arguments on those issues.

In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. *Id.* at 679.

An employment discrimination complaint need not contain specific facts establishing a prima facie case, but must contain only a "short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Rule 8(a)(2). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 506 (2002). However, well-pleaded facts in the complaint must permit the court to infer more than the mere possibility of misconduct. *See* Fed. R. Civ. P. 8(a)(2).

### III. DISCUSSION

#### A. Race and gender discrimination

Plaintiff claims that Defendant discriminated against her in the workplace in violation of Title VII and § 1981, alleging a variety of acts culminating in her discharge. (Doc. No. 1 at ¶ 35, 40, 51). The necessary elements to establish a discrimination claim under Title VII and § 1981 are the same. *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004); *Gariola v. Virginia Dep't of General Services*, 753 F.2d 1281, 1285 (4th Cir. 1985). Race and gender discrimination claims may be proved by either direct evidence or circumstantial evidence. *Swierkiewicz*, 534 U.S. at 506.

Plaintiff asserts sufficient circumstantial evidence to allege plausible claims of racial and sex discrimination. To survive Defendant's Rule 12(b)(6) motion to dismiss absent direct evidence, a plaintiff must allege sufficient facts showing: (1) that she is a member of a protected

class; (2) whose job performance was satisfactory; (3) that she was subjected to an adverse employment action; and (4) that similarly situated employees outside her class received more favorable treatment.[2] *See Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).

Plaintiff is part of a protected class because she was the only female on the IT team and one of two African-Americans in Defendant's Charlotte office. (Doc. No. 1 at ¶ 10). Additionally, Plaintiff raised sufficient facts in the Complaint to suggest that her job performance was satisfactory. (*Id.* at ¶ 11). For example, Plaintiff received performance ratings of "Excellent," earned customer service awards, and accumulated no disciplinary warnings or job coaching prior to April 2014. (*Id.*)

In order to demonstrate "adverse employment action" for the purposes of Plaintiff's Title VII claim, Plaintiff must show a "discriminatory act that 'adversely affect[ed] the terms, conditions, or benefits of the plaintiff's employment.'" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). The typical requirements for an adverse employment action are "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). This standard is strict, as "Congress did not intend Title VII to provide redress for trivial discomforts endemic to employment." *Id.* at 256. Plaintiff claims she was terminated on the basis of sex and race discrimination. (Doc. No. 1). The Complaint alleged that Plaintiff had been exposed to cursing and foul language from her coworkers throughout her employment, although Plaintiff was terminated for similar actions and for leaving the office early after

---

[2] Plaintiff cites the structured procedures set forth in *McDonnell Douglas Corp v. Green*. 411 U.S. 792 (1973). However, the Supreme Court held the *McDonnell Douglas* framework to be an evidentiary rather than a pleading standard, noting "the prima facie case should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz*, 534 U.S. at 512.

working all weekend. (*Id.*) Defendant states that Plaintiff never mentions race or gender in explaining her termination, rather that she conceded she was terminated for legitimate reasons. (Doc. No. 7). However, Plaintiff notes that her Caucasian, male coworkers had exhibited similar behavior but had not faced termination and that Plaintiff was told that Mr. Munyak planned to "get rid of her." (*Id.*) Thus, Plaintiff has alleged sufficient facts to constitute adverse employment action in order to Defendant's Motion to Dismiss.

Plaintiff asserts she was treated differently than her male, Caucasian coworkers throughout her time as an employee of Defendant. (*See* Doc. No. 1). Beyond the assignment of extraneous clerical responsibilities, Plaintiff notes that she was not provided the same job-critical office equipment as her Caucasian, male team members, and she was left out of work-related meetings, trainings, outings, and business trips attended by her coworkers. (*Id.*) Further, Plaintiff alleges that no action was taken when Plaintiff complained about Mr. Owens's behavior, and Plaintiff's promotional meeting was rescheduled three times. (Doc. No. 8). Finally, Plaintiff asserts that she was subjected to remarks from Mr. Munyak and Mr. Owens that she understood to be discriminatory. (Doc. No. 1 at ¶¶ 20-23). Defendant notes Plaintiff fails to allege that her position was filled by someone outside of her protected class. (Doc. No. 7). However, this showing is not necessary at the pleadings stage. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case.").

In sum, Plaintiff's racial and sex discrimination claims survive Defendant's Rule 12(b)(6) Motion to Dismiss because Plaintiff's factual allegations are enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiff has alleged sufficient facts to

meet the elements of a discrimination claim under Title VII and § 1981 for purposes of a Rule 12(b)(6) motion to dismiss.

### B. Retaliation

Title VIII prohibits discrimination against any employee who "has opposed any . . . unlawful employment practice" under Title VII. 42 U.S.C.A. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) her employer took some adverse employment action against her; and (3) there is a causal link between the adverse employment action and the protected activity. *Ennis v. Mission Med. Associates,* No. 1:15CV105, 2016 WL 1603593, at *4-5 (W.D.N.C. Mar. 28, 2016), *report and recommendation adopted*, No. 115CV00105MOCDLH, 2016 WL 1574614 (W.D.N.C. Apr. 19, 2016). However, as previously discussed, an employment discrimination complaint need not contain specific facts establishing a prima facie case, but must contain only a "short and plain statement of the claim showing the pleader is entitled to relief." *Swierkiewicz*, 534 U.S. at 512. In a retaliation claim, the plaintiff must allege sufficient facts to show that the defendant discriminated against Plaintiff because she complained of sexual and race discrimination. *Ennis*, 2016 WL 1603593, at *4-5. Further, the plaintiff must allege facts demonstrating that the unlawful retaliation was the but-for cause of the alleged discriminatory action by the employer. *Id.*

The Complaint gives rise to a plausible claim that, but-for Plaintiff's complaints of race and sex discrimination to her supervisor and to the Human Resources Office, she would not have been terminated. (*See* Doc. No. 1). Plaintiff alleges sufficient facts to show that she had a reasonable belief that she had experienced race and sex-based discrimination. (*Id.*) Additionally, Plaintiff engaged in a protected act when she complained to Human Resources in June 2014. (*Id.*

8

at ¶ 25). After Plaintiff returned from medical leave in September 2014, Mr. Munyak engaged in behavior that Plaintiff believed penalized her for the complaints of racial and sex discrimination, such as changing her job responsibilities and removing her access to certain accounts. (*Id.* at ¶ 26).

Finally, Plaintiff offers sufficient facts to suggest a causal connection between the allegedly retaliatory acts after Plaintiff complained to Human Resources and her ultimate termination. Although Defendant claims Plaintiff was terminated for using "inappropriate language" and for leaving work early, other Caucasian, male employees had used foul language throughout Plaintiff's employment without being terminated. (*Id.* at ¶ 24). Further, Plaintiff told Mr. Munyak she was leaving early. (*Id.* at ¶ 29). The circumstances surrounding the termination and Plaintiff's factual allegations regarding pre-termination discrimination suggest Defendant's reason for termination was pretextual, and that Plaintiff would not have been terminated had she not complained to Mr. Munyak and Human Resources. Thus, Plaintiff has alleged sufficient facts to state a facially plausible claim for retaliation.

### C. Hostile work environment

Title VII creates a hostile work environment claim because an employee's work environment is a term or condition of employment. *Walker v. Mod-U-Kraf Homes*, 775 F.3d 202, 207 (4th Cir. 2014). A plaintiff alleging racial or sex-based harassment "must demonstrate that a reasonable jury could find [the] harassment (1) unwelcome; (2) based on [her race and/or sex]; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001). A hostile work environment is one "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

9

create an abusive working environment." *Walker*, 775 F.3d at 207. Further, the alleged harasser's relationship to the plaintiff as a supervisor or as a coworker is a critical determination in a hostile work environment inquiry. *McKinnish v. Donahoe*, 40 F. Supp. 3d 689, 694 (W.D.N.C. 2015). In *Faragher v. City of Boca Raton*, the Supreme Court held that if a supervisor is engaging in harassment and takes tangible employment action against employee victim, then the employer can be vicariously liable for that supervisor's actions. 524 U.S. 775, 807 (1998). Employer liability for harassment by a coworker only attaches if the employer was negligent in controlling the working conditions. *McKinnish*, 40 F. Supp. 3d at 695 (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Plaintiff alleges that she suffered several incidents amounting to a hostile work environment claim while she was an employee of Defendant. (Doc. No. 1-1 at ¶ 40; Doc. No. 10-1 at 40) However, to the extent that Plaintiff alleges that Mr. Munyak created a hostile work environment as her supervisor, she is unsuccessful. Plaintiff alleges mere inconveniences, such as the fact that Mr. Munyak kept her out of job critical meetings and failed to supply her with job-related information. (Doc. No. 8). Plaintiff also points to allegedly discriminatory comments from her supervisor. (*Id.*) However, this behavior is not sufficiently "severe or pervasive" to rise to the level of a hostile work environment claim. *Walker*, 775 F.3d at 207. Plaintiff identifies only a few comments from her supervisor and a series of incidents occurring over a period of months. (*See* Doc. No. 1). These instances do not arise to behavior creating a hostile work environment, especially considering conduct this Court has previously found actionable. *See, e.g.*, *Tims v. Carolinas Healthcare Sys.*, 983 F. Supp. 2d 675, 681 (W.D.N.C. 2013) (holding plaintiff's allegations that a supervisor referred to her as "you people" and "y'all blacks" did not rise to the level of severity necessary to alter the terms and conditions of employment).

To the extent that Plaintiff alleges that Mr. Owens created a hostile work environment, Plaintiff is again unsuccessful. First, Plaintiff has not alleged sufficient facts to suggest that her coworker's conduct can be attributed to SGL Carbon, Inc., as she does not assert anything to indicate that SGL Carbon was negligent in controlling the working conditions of its Charlotte office. *See, e.g*, *McKinnish*, 40 F. Supp. 3d at 697 (holding that plaintiff failed to present evidence that a postal service employer was negligent in controlling working conditions). Further, similar to Plaintiff's hostile work environment claim against Mr. Munyak, the Complaint does not allege behavior from Mr. Owens rising to the level necessary for a hostile work environment claim. In support of her claim, Plaintiff points to one comment from Mr. Owens that she understood to be discriminatory and incidents where Mr. Owens refused to help Plaintiff. (*See* Doc. No. 1). Plaintiff's claims against Mr. Owens do not "alter the conditions of the victim's employment and create an abusive working environment." *Walker*, 775 F.3d at 207.

Finally, Plaintiff's Proposed Amended Complaint (Doc. No. 10-1) contains no additional facts that could give rise to an inference that Defendant created a hostile work environment. Accordingly, although she will be permitted to file her Amended Complaint, she should omit reference to Defendant's alleged creation of a hostile work environment.

## IV. CONCLUSION

The Court finds that Plaintiff's Complaint adequately states claims of race discrimination, gender discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Accordingly, Plaintiff's discrimination and retaliation claims are not dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). However, the Court finds that the Complaint fails to allege sufficient facts to show Plaintiff is entitled to relief for her hostile work environment claim. The Court will grant a motion to dismiss where

the factual allegations do not "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 570.

**THEREFORE**, Defendant's Motion to Dismiss for Failure to State a Claim (Doc. No. 6) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Motion to Amend/Correct is **GRANTED**, and Plaintiff may file her Amended Complaint.

**SO ORDERED**.

Signed: June 27, 2016

Graham C. Mullen
United States District Judge